IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


Kent Maynard, Jr.,                    )
                                      )
    Plaintiff,                        )
                                      )
                                      )
    v.                                )          No. 24 C 3612
                                      )
                                      )
The City of Chicago and               )
Carmen Mostek,                        )
                                      )
    Defendant.                        )


Memorandum Opinion and Order

Pending before me is plaintiff Kent Maynard Jr.'s motion to compel the production of evidence from defendant the City of Chicago ("Chicago"). I grant that motion in part and deny it in parts.

**I.**

On April 21, 2024, defendant Carmen Mostek, an officer with the Chicago Police Department, shot and killed Maynard's dog. Maynard sued Mostek and Chicago and maintains claims against them for unreasonable seizures pursuant to 42 U.S.C. § 1983 (Count I), assault (Count V), intentional infliction of emotional distress (Count VII), *respondeat superior* (Count VIII), and an Illinois law

1

requiring indemnification of municipal employees (Count IX).[1] ECF 22 at 32-42. A full treatment of the facts can be found in my February 9, 2026, memorandum opinion and order on defendants' motions for summary judgment. ECF 153.

The Chicago's Civilian Office of Police Accountability ("COPA") opened an investigation into the shooting. Maynard asked Chicago to turn over discovery related to that investigation, including COPA's report, the drafts of that report, and the facts underpinning the report. Maynard also requested that Chicago make Jeanne Goodwin, who was the initial lead investigator for COPA but was later replaced, available for a deposition. Chicago refused these requests, asserting the deliberative process privilege, and Maynard, after an AI-related hiccup, moved to compel.

**II.**

Federal Rule of Civil Procedure 26(b)(1) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information,

---

[1] I dismissed Counts II and III (dealing with *Monell* liability) pursuant to defendants' motion under Fed.R.Civ.P. 12(b)(6). ECF 49. I granted defendants summary judgment as to Counts IV and VI. ECF 153.

the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." A party claiming privilege must show why the information is privileged and should not be produced. Fed.R.Civ.P. 26(b)(5)(A). District courts have broad discretion when ruling on discovery and privilege. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

## III.

Maynard has moved to compel Chicago to produce COPA's investigative report (known as a "final summary report" or "FSR"), "all drafts of the [FSR]," and "all factual material underpinning the [FSR]," as well as "Jeanne Goodwin, [the COPA investigation's] dismissed lead investigator, for deposition." ECF 109-1 at 1. Prior to the motion to compel, Chicago asserted the deliberative process privilege as to all of Maynard's requests. *E.g.* ECF 162-6 and ECF 162-7.[2] Now, Chicago has staked out a more nuanced position.

-----

[2] For some reason, Exhibits C–G of defendants' response to plaintiff's motion to compel (ECF 162-3 through ECF 162-7) are preceded by 90-odd page transcripts from an unrelated Section 1983 case involving the Chicago police, *Tate v. City of Chicago*. A jury recently awarded Mrs. Tate and the other plaintiffs several million dollars. Entered Judgment, *Tate*, No. 1:18-CV-7439, ECF 613 (N.D. Ill. Feb. 26, 2026) (Tharp, J.).

## A. The FSR and Attendant Reports

Chicago asserts that it originally refused to produce the FSR because it was still pending internal review at COPA and, once completed, would then have been pending further review by the Superintendent of the Chicago Police Department pursuant to Chicago Municipal Code § 2-78-130.[3] Now, however, COPA has finalized the FSR and turned it over to the Superintendent of the Chicago Police Department for review. The Superintendent, in turn, has decided to issue a "Concurrence and Nonconcurrence" with the findings in the FSR. ECF 162 at 4. All of that accomplished, Chicago has consented to produce "the FSR, Nonconcurrence Letter, and supplemental FSR in the near future," writing that it "hopes" to do so "in short order." *Id.*

Inasmuch as the FSR does not seem to have been Maynard's main concern (per his counsel, "[W]e are not seeking [the FSR] at

---

[3] "**2-78-130 Decisions, recommendations.**

  (a) *Disciplinary-related recommendations.*

    (i) If the [COPA] Chief Administrator issues a recommendation...with regard to one or more members of the Police Department, the Superintendent [of the Chicago Police Department] shall respond to such recommendation within 60 days[.]"

The full Code can be reached at: https://codelibrary.amlegal.com/codes/chicago/latest/chicago_il/0-0-0-2600341.

this time, only the facts underpinning [it]," ECF 162-7 at 98), as to the FSR, any supplemental FSR, and any commentary by the Superintendent, I grant Maynard's motion and direct Chicago to produce them "in short order."

### B. The Draft Reports and the Underlying Facts

Chicago next asserts that the deliberative process privilege straightforwardly applies to, and protects against disclosure, any and all draft versions of the FSR. As to the facts underpinning the report, Chicago contends that it has already provided them. And Chicago argues that Ms. Goodwin's testimony, along with most of the rest of what Maynard has asked for, is not relevant to the elements of Maynard's claims.

The deliberative process privilege, a subset of the executive variety, aims to protect the content of the internal discussions and debates that precede executive policymaking. The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (citations omitted). The Illinois Supreme Court has declined to extend an evidentiary privilege to deliberative process under

state common law, preferring to leave its adoption to the state legislature. *People ex rel. Birkett v. City of Chicago*, 705 N.E.2d 48, 53 (Ill. 1998). But where a case arises under a district court's federal question jurisdiction, federal common law governs matters of privilege. *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981); F.R.E. 501. This continues to be true where a plaintiff asserts supplemental state law claims. *Memorial Hosp.*, 664 F.2d at 1061 fn. 3.[4]

The deliberative process privilege applies to documents or discussions which are both "pre-decisional" and "deliberative." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). Materials are pre-decisional only if they are "actually

---

[4] *Cf. Murdock v. City of Chicago*, 565 F. Supp. 3d 1037 (N.D. Ill. 2021). In *Murdock*, the court departed from the bulk of decisions in this district and declined to find that state and municipal entities in Illinois could invoke the deliberative process privilege in federal question cases. *Id.* at 1043. The court rested its decision in part on the position that "recognizing the privilege for [state] officials in federal question cases in federal court would hardly relieve the chilling problem" that the privilege is meant to solve, "given the privilege's absence in Illinois state court or in cases in federal court where Illinois law supplies the rule of decision." *Id.* at 1044.

This is persuasive reasoning, but, while plaintiff has mentioned *Murdock*, he has not developed an argument to the effect that the privilege should not apply at all. *See* ECF 109-1 at 5 fn. 5. Rather, both parties have proceeded as if the privilege obtains, and I decide the pending motion pursuant to that tacit understanding.

[a]ntecedent to the adoption of an agency policy," and deliberative only if they "actually...[relate] to the process by which policies are formulated." *Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 375 (7th Cir. 2004) (citations omitted). While the production of COPA reports does not necessarily resemble traditional executive *policy*-making, courts in this district have found that the privilege applies to them. *E.g. Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1017 (N.D. Ill. 2016) ("[T]he privilege extends to 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'") (quoting *Dept. of Int. v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 8 (2001)). Finally, the privilege does *not* extend to "documents reflecting an agency's final policy decisions" nor the factual materials which underlay agency decision-making. *Enviro Tech*, 371 F.3d at 374–75.

The party asserting the deliberative process privilege must first make out a *prima facie* case that it should apply, meaning that:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*Rodriguez v. City of Chicago*, 329 F.R.D. 182, 186 (N.D. Ill. 2019) (citations omitted). The privilege is conditional, and the party seeking disclosure can overcome the *prima facie* case by showing that it has a particularized need that overrides it. *Id.*

### 1. *Prima Facie* Case

Defendants attached a declaration from Angela Hearts-Glass, a Deputy Chief Administrator at COPA, to their response to the motion to compel. ECF 162-8. In it, Hearts-Glass asserts that she has "personally reviewed" the FSR and the drafts that went into it and has asserted that they, as well as attendant related documents, are subject to the deliberative process privilege. *Id.* at 2. In his reply, Maynard argues that Hearts-Glass's declaration is no more than a general "statement of policy supporting the privilege," and that it "recites no precise and certain reasons for preserving the confidentiality" of the requested materials. ECF 164 at 3 (quotations omitted). Maynard also complains that Chicago did not provide such a declaration asserting the privilege earlier on in the litigation. *Id.* at 3 fn. 3.

A litigant may first produce an affidavit in support of the privilege in response to a motion to compel without forfeiting its protection. *Guzman v. City of Chicago*, 2011 WL 55979, *1, *2 (N.D. Ill. Jan. 7, 2011). And Hearts-Glass is specific enough in her statement. She notes that the "drafts of summary reports and

8

related communications" contain discussions among investigators and between investigators and their supervisors, and she describes the way in which exposure of the drafts and communications would serve to chill deliberations at COPA. ECF 162-8 at 3–4. These representations are sufficient to make out a *prima facie* case that the draft reports and related documents are subject to the privilege. *Rodriguez*, 329 F.R.D. at 186. The burden thus shifts to Maynard, who must show that he has a particularized need for the requested materials to overcome the privilege.

## 2. Particularized Need

When considering a litigant's showing of their particularized need, along with any other relevant factors, I may consider:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose; (3) the government's role in this litigation; (4) the seriousness of the litigation and the issues involved; and (5) the degree to which the disclosure of the document sought would tend to chill future deliberations within government agencies.

*Rodriguez*, 329 F.R.D. at 187 (citations omitted). Maynard's arguments in favor of a particularized need founder on the first two factors: to the extent that he wants the factual underpinnings of the FSR, he already has them, and insofar as he wants to expose COPA's or Chicago's decision-making processes, they are not relevant to his claims.

9

COPA regulations separate investigative files into "attachments" and "working materials." "Working materials" are the classic subject of deliberative process privilege, like draft reports and communications between investigators and supervisors. COPA Rules and Regulations Art. III § 3.10(II)(C).[5] "Attachments," by contrast, include everything that would constitute the factual underpinnings of a report:

> 1. Evidence. This includes, but is not limited to, statements (audio and transcripts), case and arrest reports, medical records, relevant video, court documents, and records received in response to COPA requests and subpoenas.
>
> 2. Investigative Reports. An investigative report describes a substantive event or investigatory action. For example, an interview, scene response, the acquisition or receipt of documents, or information provided by a complainant or witness.
>
> 3. Other documents that show COPA's investigatory steps. This includes, but is not limited to, letters to/from the complainant (family member or legal counsel) and/or involved Department member(s), letters received related to the investigation, external request forms, and subpoenas.

*Id.* § 3.10(II)(B). Chicago has already given Maynard all of the "attachments" from Mostek's COPA investigation file. ECF 162 at 2. Maynard complains that the attachments have arrived in tranches,

---

[5] Effective Feb. 8, 2022, https://www.chicagocopa.org/wp-content/uploads/2022/02/COPA-Policy_Inv-File-Maintenance_FINAL_2022-02-08.pdf.

10

rather than in one batch following his first request, but as Chicago has pointed out, the investigation was ongoing when it began producing these attachments, and it continued producing them until the investigation ended. As such, the "availability of other evidence that would serve the same purpose" cuts strongly against Maynard, given that he has already received the evidence he claims to seek: the very documents, records, and interviews on which COPA relied. *Rodriguez*, 329 F.R.D. at 187.

As for the drafts of the FSR and the circumstances of Ms. Goodwin's replacement as lead investigator, Maynard struggles in his motion and reply in support of the same to articulate how they would bear on his claims. In the motion, Maynard argues that "in this civil rights case...Defendants' intent and misconduct are directly at issue." ECF 109-1 at 2. Later on, he writes that, "The COPA report addresses the very conduct at issue." *Id.* at 6. In the reply, Maynard contends that:

> [Chicago] has expressly disavowed and sought to discredit the Tactical Response Report ("TRR") prepared by responding officers, which concluded that Mostek acted as a Chicago police officer. [Chicago] has also attempted to distances itself from testimony of its own Rule 30(b)(6) witnesses acknowledging that the TRR characterization of Mostek's conduct as within the scope of her duties as a CPD officer was persuasive.
>
> The COPA investigation examined the same underlying facts. Plaintiff is entitled to know whether COPA considered those facts, whether the [FSR] and draft FSR...rely upon them, and what factual conclusions were reached during that investigation.

11

ECF 164 at 1-2.

Maynard's problems here are several. First, he does not need the drafts of the FSR to "know whether COPA considered" or "rel[ied]" on certain facts or what "factual conclusions" it reached—all of that information will be available by comparing the attachments he has received with the FSR he is about to get. Second is that while *Mostek's* intent and misconduct are at issue in his claims against *her*, *Chicago's* intent and misconduct are not, neither in those nor in his claims for indemnification and *respondeat superior*.

*Monell* claims *can* implicate COPA's internal deliberations, because communications between investigators and supervisors may contain efforts to cover up police misconduct or retaliate against officers. *E.g.*, *Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1018–19 (N.D. Ill. 2016); *Rodriguez*, 329 F.R.D. at 187–88. But I have already dismissed Maynard's *Monell* claims. And even where courts have found COPA's internal discussions potentially relevant, they have looked for the plaintiff to articulate some skullduggery on the defendant's part before piercing the privilege. *Holmes*, 221 F. Supp. 3d at 1019 ("What is crucial here is that a former IPRA investigator...has come forward to assert that IPRA fired him for refusing to change his recommendations."); *Rodriguez*, 329 F.R.D. at 188 ("[Plaintiff] has not pointed to any evidence showing that

12

IPRA changed her status...to retaliate against her for breaking a code of silence."). [6] Maynard has put forward nothing to suggest that COPA might be working against him and, even if he had, it is not clear, however inflammatory it might be to the passions of a given jury, that COPA's position would be relevant to the claims at issue.

### C. Jeanne Goodwin

Maynard has the same problems with Ms. Goodwin's proposed deposition: he already has the relevant facts, and the other facts he wants are not relevant. Maynard suggests that he needs Ms. Goodwin's testimony regarding the facts she investigated, although he has not explained how it is that the COPA attachments that he has already received have insufficiently covered those. But what Maynard is really after is otherwise: "Jeanne Goodwin was the lead COPA investigator [into the shooting of Maynard's dog]. Partway through the incident, she was removed from that position...Plaintiff has not been informed (nor has the public) as to the reason she was removed from the case." ECF 164 at 4. In an email to defendants' counsel, Maynard's counsel indicated that Ms. Goodwin would be able to testify as to "why she believes she

---

[6] The IPRA was the Independent Police Review Authority, the agency which preceded COPA in the same role. *Rodriguez*, 329 F.R.D. at 186.

13

was removed as the lead investigator," which would go "to the integrity of the [COPA] report." ECF 162-7 at 98. That is, Maynard hopes to unearth a coverup.[7] But the government's motivation in replacing Ms. Goodwin—however much it might, again, affect a jury—does not go to the elements of his claims. And relevance "focuses on the claims and defenses in the case, not its general subject matter." *Motorola Sols., Inc. v. Hytera Comms. Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019).

**IV.**

Much of what COPA investigated could be relevant to Maynard's remaining claims. For that reason, I grant his motion as to the FSR, any supplemental FSRs, and any concurrences or nonconcurrences from the Superintendent, and direct defendants to produce them "in short order." The facts underlying those investigations are non-privileged, and if COPA should generate any more "attachments" in this investigation, I direct defendants to produce them as well. As to COPA's drafts and other "working

---

[7] Defendants write that Maynard has said on "his website and Youtube [*sic*] page" that this case is "an opportunity to expose COPA and the City's investigations to show how investigations in officer misconduct are 'whitewashed.'" ECF 162 at 8.

Defendants did not cite to, and I have not looked for, any website or YouTube page. But I note that all litigants, at every level of the legal system, would be well advised to check with their counsel before blogging or vlogging about their cases.

14

materials," as well as Ms. Goodwin's deposition, I deny Maynard's

motion.

        **ENTER ORDER:**

_____
      **Elaine E. Bucklo**
United States District Judge
Dated: March 30, 2026

15